USDC SCAN INDEX SHEET

















AXR    2/18/04    15:03

3:03-CV-01330    ESPINOZA V. METABOLIFE INTL INC

*13*

*OPPM.*

1 | Kevin C. Young, Esq., CSB# 125298
750 B Street, Suite 2500
2 | San Diego, CA  92101
Telephone: (619)232-3090
3 | Facsimile: (619)696-0045

4 | Edward C. Watkins, Jr., Esq., CSB# 78515
5 | 7840 Mission Center Court, Suite 203
San Diego, CA  92108
6 | Telephone: (619)299-5019
Facsimile: (619)291-0860

7

8 | Scott W. McEwen, CSB#131375
HUSTON & MCEWEN
9 | 625 Broadway, Suite 600
San Diego, CA  92101
10 | Telephone: (619)595-1735
Facsimile: (619)595-1745

11

12 | Attorneys for Plaintiffs RUSSELL ESPINOZA,
JYLES MCKEE and CRYSTAL DAY

13

14 | UNITED STATES DISTRICT COURT

15 | SOUTHERN DISTRICT OF CALIFORNIA

16

| RUSSELL ESPINOZA, JYLES MCKEE | CASE NO. 03cv1330-B(NLS) |
| and CRYSTAL DAY | |
| | MEMORANDUM OF POINTS AND |
| Plaintiffs, | AUTHORITIES IN OPPOSITION TO |
| | MOTION TO COMPEL ARBITRATION |
| v. | AND STAY LITIGATION |
| | |
| METABOLIFE INTERNATIONAL, INC., a | Date: March 1, 2004 |
| California Corporation, | Time: 10:30 a.m. |
| | Courtroom: 2 |
| Defendant. | |
| | Hon. Rudy Brewster |

Plaintiffs RUSSELL ESPINOZA, JYLES MCKEE and CRYSTAL DAY
(hereinafter collectively referred to as "plaintiffs") hereby submit the following memorandum of
points and authorities in opposition to the motion to compel arbitration and stay this litigation
filed by defendant METABOLIFE INTERNATIONAL, INC. (hereinafter "METABOLIFE") in
this action:

-1-

Memorandum of Points and Authorities re Arbitration Motion | Case No. 03cv1330-B(NLS)

# TABLE OF CONTENTS

Page

I  PREFATORY STATEMENT  1

II  STATEMENT OF FACTS  3

III  COLLATERAL ESTOPPEL APPLIES
TO PRECLUDE ARBITRATION  7

IV  CALIFORNIA LAW CONTROLS THE VIABILITY
OF THE ARBITRATION CLAUSE  9

V  THERE IS NO AGREEMENT TO ARBITRATE  11

A. Plaintiffs Never Agreed to Arbitrate Disputes  11

B. METABOLIFE's 1998 Distributor Guidelines Do Not
Permit Such an Amendment  13

C. METABOLIFE's Attempted Amendment was Not Effectuated  13

VI  THE ARBITRATION PROVISION IS UNENFORCEABLE  14

VII  CONCLUSION  16

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    Page(s)

Circuit City Stores v. Adams                                            10
279 F.3d 889 (9th Cir. 2002)

Fairfield-Noble Corp. v. Pressman-Gutman Co.                            12
475 F.Supp. 899 (1979)

Hines v. Anchor Motor Freight                                          14
424 U.S. 554 (1976)

Supak & Sons Mfg. Co., Inc. v. Pervel Industries, Inc.                 10
593 F.2d 135 (4th Cir. 1979)

Ticknor v. Choice Hotels International, Inc.                            10
2001 DJDAR 9905 (9th Cir. 2001)

**CALIFORNIA STATUTES**

Cal. Civ. Proc. Code §1908                                              7

**CALIFORNIA SUPREME COURT CASES**

Armendariz v. Foundation Health Psychare Services, Inc.                10
24 Cal.4th 83 (2000)

Graham v. Scissor-Tail, Inc.                                           10
28 Cal.3d 807 (1981)

Kendall v. Ernest Pestana, Inc.                                        12
40 Cal.3d 488 (1987)

Merced Irrigation Dist. v. San Joaquin Light & Power Corp.              7
220 Cal. 196 (1934)

People v. Taylor                                                        7
12 Cal.3d 686 (1974)

Producers Dairy Delivery Co. v. Sentry Ins. Co.                         7
41 Cal.3d 903 (1986)

Skidmore v. County of Solano                                            7
154 Cal.App.2d 449 (1957)

Victoria v. Superior Court                                             11
40 Cal.3d 734 (1985)

**CALIFORNIA APPELLATE COURT CASES**

A & M Produce Co. v. FMC Corp.                                         14

135 Cal.App.3d 473 (1982)

_Badie v. Bank of America_               10, 11, 12, 16
67 Cal.App.4th 779 (1998)

_Beynon v. Garden Grove Medical Group_       14
100 Cal.App.3d 698 (1980)

_Chan v. Drexel Burnham Lambert, Inc._     10, 11, 13, 14
178 Cal App 3d 632 (1986)

_County of Contra Costa v. Kaiser Foundation Health Plan, Inc._     11
47 Cal.App.4th 237 (1996)

_Estate of Gump_          7
1 Cal.App.4th 582 (1991)

_Grinham v. Fielder_          7
99 Cal.App.4th 1099 (2002)

_Kinney v. United Healthcare Services, Inc._     14
70 Cal.App.4th 1322 (1999)

_Long Beach Unified Sch. Dist. v. State of California_     8
225 Cal.App.3d 155 (1990)

_Marsch v. Williams_          11
23 Cal.App.4th 250 (1994) [Fourth Dist., Div. One]

_Mayhew v. Benninghoff_          11
53 Cal.App.4th 1365 (1997) [Fourth Dist.]

_National Union Fire Ins. Co. v. Stites Prof. Law Corp._     8
235 Cal.App.3d 1718 (1991)

_Neal v. State Farm Ins. Cos._       10, 14
188 Cal.App.2d 690 (1961)

_Powell v. Central California Fed. Savings & Loan_     12
59 Cal.App.3d 540 (1976)

_Saika v. Gold_          15
49 Cal.App.4th 1074 (1996)

_Sandoval v. Superior Court_        8
140 Cal.App.3d 932 (1983)

_Shepard v. Morgan Keegan & Co._     12
218 Cal.App.3d 61 (1990)

_Stirlen v. Supercuts, Inc._      14, 15, 16
51 Cal.App.4th 1519 (1997)

_Takahashi v. Board of Education_       7
202 Cal.App.3d 1464 (1988)

1 | <u>Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.</u>    11
  | 164 Cal.App.3d 1122 (1985)

Memorandum of Points and Authorities re Arbitration Motion    Case No. 03cv1330-B(NLS)

# I

## PREFATORY STATEMENT

Plaintiffs' action seeks to recover damages from METABOLIFE for discriminatory pricing in violation of Federal statues.  In response, METABOLIFE contends they are subject to collaterally estoppel under non-final state court orders requiring them to arbitrate their state law contract claims, or in the alternative, compelled to arbitrate by contract.

In this respect, in July of 2000, METABOLIFE breached its distributorship agreements with all of its "independent distributors," including plaintiffs.[1]  Previously, in contemplation of its wrongful repudiation of the agreement, METABOLIFE sought to unilaterally amend the agreement in February of 2000, to impose arbitration upon all of its "independent distributors."  METABOLIFE's attempted imposition of an arbitration requirement was done without the knowledge or consent of plaintiffs, who never signed an agreement with METABOLIFE which contained an arbitration clause at the time they signed such agreement.

The heart of plaintiffs's allegations is that METABOLIFE promised not to sell its in retail stores yet, on or before August 1, 2000, METABOLIFE commenced selling its products in retail stores.  Indeed, the Distributor Guidelines issued by METABOLIFE recognized that sales of its products by retail stores would "give an unfair advantage to the retail store owner and would unreasonably interfere with the ability of other distributors in the area to make sales to consumers."[2]  On July 29, 2000, METABOLIFE held a meeting of "independent distributors" wherein METABOLIFE announced that as of August 1, 2000, its products would be marketed through large retail chains nationwide.  In conjunction with the meeting, plaintiffs and other

[1]
On August 14, 2003, Federal District Court Judge Jeffrey T. Miller issued an order in case no. 01cv1387 determining that by selling its products through retail stores METABOLIFE breached the distributorship agreements.  Declaration of Kevin C. Young, dated February 11, 2004, at paragraph 11.

[2]
1995 "Distributor Guidelines" at p. 40, a true and correct copy of which is marked and attached as Exhibit "K" to the Declaration of Scott Moberly, dated December 1, 2003.

-1-

1   "independent distributors" allege that METBOLIFE used unlawful price discrimination in an

2   attempt to coerce plaintiffs and other "independent distributors" into executing a document

3   entitled "Distribution Application and Agreement Addendum," which would have permitted

4   METABOLIFE to sell its products on a retail basis and required arbitration of any claim.  At the

5   time of the meeting, METABOLIFE also announced that retail stores would purchase Metabolife

6   356 at $ 17.99 per bottle while plaintiffs and other "independent distributors" who refused to sign

7   the "Distribution Application and Agreement Addendum" would pay a wholesale price of $22.47

8   per bottle.  Plaintiffs allege that retail stores began selling Metabolife 356 for as little as $19.99

9   per bottle, a price below plaintiffs' wholesale price.  Unable to compete, plaintiffs and their

10   distribution levels were forced out of business.

11        The present controversy concerns an arbitration provision unilaterally inserted by

12   defendants for the first time in the 2000 Distributor Guidelines.  Neither the 1995 Distributor

13   Guidelines nor the 1998 Distributor Guidelines provided for arbitration.   The 1995 Distributor

14   Guidelines contemplated a process whereby the parties would first submit their dispute to

15   non-binding mediation before commencing a non-jury judicial action.  The 1998 Distributor

16   Guidelines contain no provisions on the resolution of disputes other than a restriction on venue to

17   San Diego.  Plaintiffs dispute the enforceability of the arbitration provision on grounds that the

18   unilateral contractual modification provision could not be exercised by defendants to insert the

19   arbitration provision.

20        Moreover, the scope of the arbitration provision does not encompass

21   METABOLIFE's violation of Federal price discrimination laws.  METABOLIFE's use of

22   unlawful price discrimination in violation of Federal statutes is outside the parameters of the

23   contractual arbitration METABOLIFE asserts.

24        Previously, plaintiffs each filed actions in San Diego County Superior Court

25   against METABOLIFE, among others, for breach of contract and various related tort claims.  In

26   response, METABOLIFE sought to compel arbitration under the aforementioned disputed

27   arbitration provision.  In interlocutory, non-final rulings Judges Hayes and Wickersham ordered

28   those contract related claims to arbitration.

-2-

1    Plaintiffs will concisely show (1) the collateral estoppel asserted by

2  METABOLIFE does not apply to the state court's arbitration orders, (2) METABOLIFE is

3  subject to collateral estoppel against enforcing the disputed arbitration provision, and (3) the

4  arbitration provision is not enforceable under California law.

5                                          **II**

6                              **STATEMENT OF FACTS**

7    In or about January of 1995, METABOLIFE began business as a multi-level

8  marketing company in the business of producing a dietary product known as Metabolife 356.  In

9  order to develop a market for its only product, i.e. Metabolife 356, METABOLIFE made

10  numerous written and oral representations to induce individuals, including plaintiffs, into

11  relinquishing their time and occupations, and invest their own money to market and sell

12  Metabolife 356 as "independent distributors."  Among defendants numerous representations were

13  the following: (1) Absent any violation of the rules, a distributorship would not be canceled, and

14  constituted a proprietary interest which could be bequeathed to heirs; (2) METABOLIFE would

15  abide by the established rules; (3) Any disputes with METABOLIFE would be subject to

16  mediation, but the right to judicial access would be maintained; and (4) Above all, that the

17  multilevel marketing plan would always be "simple and fair."[3]

18    Plaintiffs, based upon the representations made to them by defendants, executed

19  the "Distributor Application and Agreement" with METABOLIFE.[4]  The "Distributor Application

20  and Agreement," which was drafted by METABOLIFE, consisted of a two-sided standardized

21  form contract to be executed on the front with minuscule printed terms on the reverse.  The form

22

23

24
_____

25  [3]    Declaration of RUSSELL ESPINOZA, dated February 11, 2004, at paragraph 2;
       Declaration of CRYSTAL DAY, dated February 11, 2004, at paragraph 2; and
26       Declaration of JYLES MCKEE, dated February 11, 2004, at paragraph 2.

27  [4]    Declaration of RUSSELL ESPINOZA, dated February 11, 2004, at paragraph 3;
       Declaration of CRYSTAL DAY, dated February 11, 2004, at paragraph 3; and
28       Declaration of JYLES MCKEE, dated February 11, 2004, at paragraph 3.

-3-

1    agreement was presented to plaintiffs on a take of leave it basis.[5]  As was the custom and practice

2    of METABOLIFE, at the time plaintiffs executed the "Distributor Application and Agreement"

3    they were not provided with a copy of the "Distributor Guidelines" despite METABOLIFE's pre-

4    printed representations in the tiny print on the back side to the contrary."  Only after Plaintiffs

5    became distributors for METABOLIFE were they provided with a copy of the "Distributor

6    Guidelines" effective as of 1995.[6]

7              The 1995 "Distributor Guidelines do not contain any provision for the arbitration

8    of disputes.  Rather, under the bold heading entitled "MEDIATION OF DISPUTES," the 1995

9    "Distributor Guidelines" provide that in the event of a dispute, the parties would submit the

10   matter to mediation first, and, if unsuccessful, then any unsatisfied party had the right to sue in

11   court:

12              All disputes and claims by the distributor relating to Metabolife...
             shall first be submitted to non-binding mediation in San Diego,
13              California before any cause of action in Federal or State court may
             accrue in favor of the distributor . . . .  The decision of the mediator
14              shall be non-binding on the parties.  If the distributor or Metabolife
             refuses to accept the mediator's decision for any reason, either
15              party may thereafter file a claim in the Federal or State courts
             located in San Diego, California.  This agreement to mediation shall
16              survive any termination or expiration of the Agreement.

17   1995 "Distributor Guidelines" at p. 64.

18   \ \ \

19   \ \ \

20   \ \ \

21   \ \ \

22   \ \ \

23   \ \ \

24
     _____

25   [5]    Declaration of RUSSELL ESPINOZA, dated February 11, 2004, at paragraph 3;
            Declaration of CRYSTAL DAY, dated February 11, 2004, at paragraph 3; and
26          Declaration of JYLES MCKEE, dated February 11, 2004, at paragraph 3.

27   [6]    Declaration of RUSSELL ESPINOZA, dated February 11, 2004, at paragraph 4;
            Declaration of CRYSTAL DAY, dated February 11, 2004, at paragraph 4; and
28          Declaration of JYLES MCKEE, dated February 11, 2004, at paragraph 4.

-4-

1    Completely ignored by defendants, to be effective any amendment of the 1995

2  "Distributor Guidelines" required a specific means of notification:[7]

3    Changes and amendments to these Distributor Guidelines will
     effective upon publication in an official Metabolife bulletin,
4    newsletter or magazine, or over the voice mail system.

5  1995 "Distributor Guidelines" at p. 68.

6    While the 1995 "Distributor Guidelines" contemplate amendment by

7  METABOLIFE, Plaintiffs understood that any such amendment would be bounded by her

8  reasonable expectations based upon defendants' express statements:

9    [T]hank you for putting your trust and hopes for a better future
     with us.
10
                                    * * *
11
     METABOLIFE enters into the Agreement relying on the
12   distributor's integrity and ability to perform his or her duties,
     obligations and responsibilities. The distributor can expect the
13   same from the company.

14  1995 "Distributor Guidelines" at p. iii and p. 9, respectively.

15    Nevertheless, Plaintiffs never received any notice of any amendment to the 1995

16  "Distributor Guidelines" by METABOLIFE.[8]

17    On July 29, 2000, at a meeting of all "independent" distributors, defendants

18  disclosed to the "independent" distributors that Metabolife 356 would be distributed to all major

19  retail chains at $ 17.99 per bottle.  Plaintiffs was presented with a document entitled "Distributor

20  Application and Agreement Addendum" which embodied an agreement for (1) the termination of

21  their "independent" distributorship, (2) the arbitration of any dispute, and (3) the release of all

22

23

24

---

25  [7]   Under paragraph 31 of the "Distributor Application and Agreement" any other
         notice was specifically required to be by certified mail (return receipt requested).

26
27  [8]   Declaration of RUSSELL ESPINOZA, dated February 11, 2004, at paragraph 6;
         Declaration of CRYSTAL DAY, dated February 11, 2004, at paragraph 6; and
         Declaration of JYLES MCKEE, dated February 11, 2004, at paragraph 6.

28

-5-

1   claims against defendants.[9]  Despite defendants' threats and  heavy handed tactics, plaintiffs

2   refused to sign the "Distributor Application and Agreement Addendum."[10]  In apparent retaliation,

3   METABOLIFE refused to sell Metabolife 356 to plaintiffs for less than a wholesale price of

4   $22.47 per bottle.  Retail stores began selling Metabolife 356 for as little as $19.99 per bottle, a

5   price far below plaintiffs' wholesale price.  Plaintiffs and their distribution levels were forced out

6   of business.

7        METABOLIFE's efforts to compel arbitration against plaintiffs are contrary to

8   binding Orders issued in both State and Federal court holding that the exact arbitration provisions

9   in this case are unenforceable.  Said orders, issued by the Honorable Robert E. May in San Diego

10   County Superior Court and the Honorable Jeffrey T. Miller in Federal District Court, respectively,

11   are final and controlling.  There are no **final** orders contrary to those issued by Judges May and

12   Miller, including the order in plaintiffs' state court cases which are also **not** final.

13        In sum, the attempt by METABOLIFE to impose binding arbitration upon

14   plaintiffs was:

15   •    After METABOLIFE began breaching the distributorship agreement;

16   •    Without actual notice to Plaintiffs;

17   •    Without Plaintiffs ever having executed any agreement which contained an
          arbitration clause;

18
19   •    In direct contravention of the express methods of notice required to effectuate
          amendment of the 1995 "Distributor Guidelines";

20   •    Immediately before METABOLIFE terminated all independent distributorships;

21   •    Precluded by the 1998 "Distributor Guidelines." which eliminated
          METABOLIFE's ability to so amend;

22
23   •    *Contrary to the two (2) final decisions holding that the arbitration provision is
          unenforceable as a matter of law.*

24   _____

25   [9]    A true and correct copy of the "Distributor Application and Agreement
          Addendum" presented to plaintiffs is marked and attached as Exhibit "1" to the

26        Declaration of RUSSELL ESPINOZA, dated February 11, 2004.

27   [10]   Declaration of RUSSELL ESPINOZA, dated February 11, 2004, at paragraph 7;
          Declaration of CRYSTAL DAY, dated February 11, 2004, at paragraph 7; and

28        Declaration of JYLES MCKEE, dated February 11, 2004, at paragraph 7.

-6-

1

## III

2

## COLLATERAL ESTOPPEL APPLIES TO PRECLUDE ARBITRATION

3      The "offensive" use of collateral estoppel occurs where, as here, a plaintiff seeks to

4 prevent a defendant from relitigating an issue determined adversely to the defendant in another

5 action. Estate of Gump, 1 Cal.App.4th 582, 608 (1991).  A principal purpose of collateral

6 estoppel is to avoid inconsistent judicial decisions which are contrary to the public's perception of

7 the judicial system. *See* People v. Taylor, 12 Cal.3d 686, 685 (1974).  In California the doctrine of

8 collateral estoppel precludes relitigation of an issue previously adjudicated where (1) the issue

9 necessarily decided in the previous suit is identical to the issue presented, (2) there was a **final**

10 determination on the merits of the issue, and (3) the party against whom the plea is asserted was a

11 party or in privity with a party to the prior suit. Producers Dairy Delivery Co. v. Sentry Ins. Co.,

12 41 Cal.3d 903, 910 (1986); *see also* Grinham v. Fielder, 99 Cal.App.4th 1099 (2002).

13      Section 1908 of the California Code of Civil Procedure codifies the preclusive

14 effect of a **final** order in an action or proceeding. Cal. Civ. Proc. Code §1908 (Matthew Bender

15 2002).  A **final** order, in respect to the matter directly adjudged, is conclusive as against a party to

16 the **final** order. Cal. Civ. Proc. Code §1908(a)(2) (Matthew Bender 2002).  By way of example,

17 where the existence, validity or construction of a contract has been adjudicated, the **final** judicial

18 determination of the issues presented is conclusive in subsequent actions. *See, e.g.* Merced

19 Irrigation Dist. v. San Joaquin Light & Power Corp., 220 Cal. 196 (1934); Skidmore v. County of

20 Solano, 154 Cal.App.2d 449 (1957).  This is so even though a person who was neither a party nor

21 in privity with a party to another action, and is therefore not bound by the judicial determination

22 in that other action, asserts collateral estoppel against a person who is bound. *See* Takahashi v.

23 Board of Education, 202 Cal.App.3d 1464 (1988).

24      There has been no final determination on the merits against plaitniffs on an

25 identical issue.  **The order upon which METABOLIFE relies is interlocutory, not final, and**

26 **related to contract claims, not Federal statutory claims.**  Here, the decision upon which

27 METABOLIFE relies is in state court on state claims can not be applied to an action for violation

28 of Federal statutes.

-7-

1      In contrast, METABOLIFE is subject to the application of collateral estoppel

2  against it from two (2) **final** decisions against it on this very issue . On July 27, 2001, plaintiff

3  Melvin Holler filed a complaint against METABOLIFE, Holler v. Metabolife International, Inc.,

4  San Diego County Superior Court No. GIC 771533.[11] As here, in response METABOLIFE filed

5  a virtually identical motion to compel arbitration.[12] To wit, the issue presented in Holler was the

6  validity and enforceability of the arbitration provisions within the Distributor Guidelines

7  unilaterally adopted by METABOLIFE in 2000. On December 12, 2001, the Honorable Robert

8  E. May issued an order finding the arbitration provision within the Distributor Guidelines to be

9  unenforceable as a matter of law and denied METABOLIFE's motion to compel arbitration.[13] No

10  appeal was taken from Judge May's order, which became final on February 19, 2002.[14]

11      Under sections 1294 and 1294.2 of the Code of Civil Procedure in conjunction

12  with rule 2(a)(2) of the California Rules of Court any appeal of Judge May's decision in Holler by

13  METABOLIFE was required to be filed by February 19, 2002. No notice of appeal was filed by

14  METABOLIFE in Holler. Consequently, Judge May's decision determining the arbitration

15  provision is unenforceable is now final and binding. *See* National Union Fire Ins. Co. v. Stites

16  Prof. Law Corp., 235 Cal.App.3d 1718, 1726 (1991); Long Beach Unified Sch. Dist. v. State of

17  California, 225 Cal.App.3d 155, 169 (1990); Sandoval v. Superior Court, 140 Cal.App.3d 932,

18  936-937 (1983).

19      The same exact issue was also decided in the United States District Court in

20  Goldstein v. Metabolife International, Inc., Southern District of California No. 01 CV 1387 JM

21  (POR). The validity and enforceability of the same arbitration provisions within the Distributor

22

---

23

24  [11]    Declaration of Kevin C. Young, dated February 11, 2004, at paragraph 6.

25  [12]    Declaration of Kevin C. Young, dated February 11, 2004, at paragraph 7.

26  [13]

27    Declaration of Kevin C. Young, dated February 11, 2004, at paragraph 8.

28  [14]    Declaration of Kevin C. Young, dated February 11, 2004, at paragraph 10.

-8-

1   Guidelines as unilaterally adopted by METABOLIFE in 2000 was again at issue.  The <u>Golstein</u>

2   plaintiffs averred substantially the same acts of wrongdoing against defendant.[15]   As here,

3   METABOLIFE responded to the allegations of misconduct by filing a motion to compel

4   arbitration under the provisions of the Distributor Guidelines as unilaterally amended by

5   METABOLIFE in 2002.[16]  METABOLIFE's motion to compel arbitration in <u>Goldstein</u> was

6   indistinguishable in every material aspect. On April 15, 2002, Federal District Court Judge Jeffrey

7   T. Miller issued an extensive order determining that the arbitration provisions asserted by

8   METABOLIFE were, as a matter of law, unenforceable and denied the motion by METABOLIFE

9   to compel arbitration.[17]  The <u>Goldstein</u> decision is also final.  Notwithstanding the Federal rule

10  that an order is final upon issuance, METABOLIFE did not appeal Judge Miller's decision within

11  the jurisdictional time limit.

12          There are no other **final** orders on the identical issue contrary to the <u>Holler</u> and

13  <u>Goldstein</u> decisions.   There is no final decision on the identical issue that can be applied against

14  plaintiffs.  There are, however, two (2) dispositive orders which have determined that the

15  arbitration provisions of the Distributor Guidelines are unenforceable.

16                                      **IV**

17  <u>**CALIFORNIA LAW CONTROLS THE VIABILITY OF THE ARBITRATION CLAUSE**</u>

18          The disputed arbitration provision mandates use of the rules of the AAA and

19  California law to resolve all issues except as to the disputed arbitration provision, for which the

20  Federal Arbitration Act is cited.  METABOLIFE relies upon this reference to the Federal

21  Arbitration Act in an effort to avoid the application of California contract law.  METABOLIFE's

22  reliance is misplaced.  Both Federal and California courts have repeatedly held that disputes over

23  arbitration clauses are to be resolved under state contract law:

24  ———————————————

    [16]

25          Declaration of Kevin C. Young, dated February 11, 2004, at paragraph 3.

26  [17]

27          Declaration of Kevin C. Young, dated February 11, 2004, at paragraph 4.

    [18]

28          Declaration of Kevin C. Young, dated February 11, 2004, at paragraph 5.

1
2
3
4

> The initial step in determining whether there is an enforceable ADR agreement . . . involves applying ordinary state law principles that govern the formation and interpretation of contracts in order to ascertain whether the parties have agreed to some alternative form of dispute resolution.  Under both federal and California state law, arbitration is a matter of contract between the parties. [Citations.]

5    Badie v. Bank of America, 67 Cal.App.4th 779, 787 (1998).

6          Indeed, By its terms, the Federal Arbitration Act does not apply until the

7    arbitration clause in question is determined to be a part of the contract. Chan v. Drexel Burnham

8    Lambert, Inc., 178 Cal App 3d 632, 640 (1986), quoting Supak & Sons Mfg. Co., Inc. v. Pervel

9    Industries, Inc., 593 F.2d 135, 137 (4th Cir. 1979).  The viability of the arbitration provision is

10   thus determined by California law:

11
12
13
14
15

> Despite the "liberal federal policy favoring arbitration agreement," [citation] state law is not entirely displaced from federal arbitration analysis.  Under §2, "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." [Citation.] "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening §2. [Citation.]

16   Ticknor v. Choice Hotels International, Inc., 265 F.3d 931, 936-937 (9th Cir. 2001); Circuit City

17   Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002)..

18          The fundamental justification for arbitration is its voluntariness. Armendariz v.

19   Foundation Health Psychare Services, Inc., 24 Cal.4th 83, 115 (2000).  Policies favoring

20   arbitration as a means of dispute resolution yield to its fundamental contractual nature. Id.  An

21   alleged agreement to arbitrate is therefore subject to the defenses applicable in all contract

22   disputes.  Most notably, "[t]he rule requiring the resolution of ambiguities against the drafting

23   party 'applies with peculiar force in the case of a contract of adhesion . . . .'" Graham v. Scissor-

24   Tail, Inc., 28 Cal.3d 807, 819, fn. 19 (1981), quoting Neal v. State Farm Ins. Cos., 188

25   Cal.App.2d 690, 695 (1961).

26   \ \ \

27   \ \ \

28   \ \ \

-10-

# V

## THERE IS NO AGREEMENT TO ARBITRATE

The issue presented by a motion to compel arbitration is two-fold.  The threshold question is whether there is an agreement to arbitrate.

### A.  Plaintiffs Never Agreed to Arbitrate Disputes.

Under California contract law, there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate.  Victoria v. Superior Court, 40 Cal.3d 734, 739 and 744 (1985).  Rather, arbitration agreements must be consensual, and "a party can be compelled to arbitration only when he or she has agreed in writing to do so."  County of Contra Costa v. Kaiser Foundation Health Plan, Inc., 47 Cal.App.4th 237, 245 (1996).

Emphasizing the preeminence of the right to judicial access, the Court of Appeal has repeatedly held:

> The right to pursue claims in a judicial forum is a substantial right
> and not one lightly to be deemed waived.  Because the parties to an
> arbitration clause surrender this substantial right, the general policy
> favoring arbitration cannot replace an agreement to arbitrate.

Mayhew v. Benninghoff, 53 Cal.App.4th 1365, 1371 (1997) [Fourth Dist.], quoting Marsch v. Williams, 23 Cal.App.4th 250, 254 (1994) [Fourth Dist., Div. One].

To reiterate, the right to select a judicial forum vis-a-vis arbitration is a substantial right not lightly to be deemed waived. Chan v. Drexel Burnham Lambert, Inc., supra,  178 Cal App 3d at p. 643.  Because the constitutional right to a trial is basic and fundamental, in cases in which there is doubt as to whether the is an agreement to arbitrate, the doubt must be resolved in favor of preserving the right to a trial. Titan Group, Inc. v. Sonoma Valley County Sanitation Dist., 164 Cal.App.3d 1122, 1127-1128 (1985).

Undisputed, plaintiffs never signed an agreement which contained an arbitration provision.  Instead, METABOLIFE contends that because the contract, i.e. the 1995 "Distributor Guidelines," contained a provision for unilateral modification of the terms of the agreement by METABOLIFE, that METABOLIFE could therefore amend the agreement so as to deprive

-11-

1  plaintiffs of their right to a judicial forum and impose arbitration upon plaintiffs.  Incredibly,

2  METABOLIFE contends this is so even though the inclusion of new terms in the contract

3  occurred after it breached terms of the contract and in contemplation of its further breach through

4  the illicit termination of the agreement

5          The virtually identical argument was emphatically rejected by the California Court

6  of Appeal in Badie v. Bank of America, 67 Cal.App.4th 779, 787 (1998).  In Badie, the defendant

7  argued that the provision in the contract permitting it to "change any term, condition, service or

8  feature . . . at any time" allowed it to amend the contract so as to impose arbitration of all

9  disputes. Id. at p. 786.  The Court of Appeal disagreed.  The provision permitting the unilateral

10  change in the terms by the defendant was, by its very nature, restricted "to the universe of terms

11  included in the original agreement."  Id. at p. 797.  The Badie court held that "the parties did not

12  intend that the change of terms provision should allow the [defendant] to add completely new

13  terms such as an ADR clause simply by sending out a notice." Id. at p. 803.  The Badie decision is

14  precisely on point with the issues at bar.

15          When a contracting party reserves the right to unilaterally amend the terms of an

16  adhesion contract, the actual exercise of that provision must be within the reasonable expectations

17  of the other party. Powell v. Central California Fed. Savings & Loan,59 Cal.App.3d 540, 551

18  (1976).  Similarly, where a contract confers on one party a discretionary power affecting the

19  rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance

20  with fair dealing.  Kendall v. Ernest Pestana, Inc., 40 Cal.3d 488, 500 (1987); Shepard v. Morgan

21  Keegan & Co., 218 Cal.App.3d 61, 66-67 (1990).  The unilateral insertion of an arbitration clause

22  constitutes a material alteration of a contract beyond the bounds of a party's reasonable

23  expectations. See Fairfield-Noble Corp. v. Pressman-Gutman Co., 475 F.Supp. 899, 902, fn.2

24  (1979).

25          As in Badie, METABOLIFE's ability to unilaterally amend the parties' original

26  agreement is limited to both the "universe of terms" contained in the original agreement and the

27  reasonable expectations of plaintiffs.  None of the agreements ever executed by plaitniffs

28  contained an arbitration clause.  Indeed, when presented with such an agreement in August of

-12-

1   2000, plaintiffs refused to sign.  In short, the unilateral addition of an arbitration requirement to

2   the original agreement between the parties depriving plaintiffs, but not METABOLIFE, to access

3   to a judicial forum is without her consent, written or otherwise.

4   **B.  METABOLIFE's 1998 Distributor Guidelines Do Not Permit Such an Amendment.**

5           Moreover, METABOLIFE issued new "Distributor Guidelines" in October of

6   1998.  Said guidelines specifically provided for judicial proceedings for the resolution of disputes.

7   *See* 1998 "Distributor Guidelines" at p. 17.  Astonishingly, the 1998 "Distributor Guidelines" do

8   not permit METABOLIFE the ability to make changes to this 1998 provision.

9           To derive the ability to amend, METABOLIFE claims that their "Glossory"

10  definition for the term "Distributor Guidelines for a Premier Distributor" allows them to amend

11  the entire agreement with impunity.  Nowhere within the substantive provisions of the 1998

12  Distributor Guidelines is their any such provision.  Aside from the fact that plaintiffs did not have

13  a "Premier Distributorship," the definition within the agreement of a term therein does not provide

14  the pervasive right to amend claimed by METABOLIFE.

15  **C.  METABOLIFE's Attempted Amendment was Not Effectuated.**

16          METABOLIFE did not follow its own procedures required to effectuate any

17  amendment of the 1995 "Distributor Guidelines."  By the express terms of the 1995 "Distributor

18  Guidelines," in order to effectuate any amendment METABOLIFE was specifically required to

19  publish the revisions in the "official METABOLIFE bulletin, newsletter or magazine or over the

20  voice mail system."  In this respect, the "Distributor Guidelines" control over any conflict with the

21  "Distributor Application and Agreement."  As such, notice by "mass communication means" is

22  invalid to effectuate any amendment of the 1995 "Distributor Guidelines."

23          The evidence on publication is not in dispute.  METABOLIFE used an invalid,

24  nonconforming method to effectuate the requisite notice to plaintiffs.  METABOLIFE supposedly

25  sent notice via a generic letter, dated February 9, 2000, which did not include the name or address

26  of the distributor, in a mass mailing.  Most notably, the letter does not contain notice of the

27  arbitration provision.  Incorporation by reference of an arbitration clause requires that reference

28  be "clear and unequivocal and the terms of incorporated documents be known or easily available

-13-

1    to parties." <u>Chan v. Drexel Burnham Lambert Inc.</u>, <u>supra</u>, at p. 645.  Absent proper notice, the

2    so-called amendments to the "Distributor Guidelines" never took effect.

3 <b>VI</b>

4 <b><u>THE ARBITRATION PROVISION IS UNENFORCEABLE</u></b>

5       Assuming, <i>arguendo</i>, the existence of a viable arbitration provision between the

6 parties, the terms of the arbitration provision are nevertheless unenforceable:

7      <i>Congress has put its blessing on private dispute settlement arrangements . . ., but it was anticipated, we are sure, that the contractual machinery

8      would operate within some minimum levels of integrity.</i>

9 <u>Hines v. Anchor Motor Freight</u>, 424 U.S. 554, 571 (1976).

10       An unconscionable agreement is typically an adhesion contract, i.e. "A

11 standardized contract which is imposed and drafted by the party of superior bargaining strength,

12 relegates the subscribing party only the opportunity to adhere to the contract or reject it." <u>Neal v.</u>

13 <u>State Farm Ins. Cos.</u>, <u>supra</u>, 188 Cal.App.2d at p. 694.  If an adhesion contract is contrary to the

14 expectations of the weaker party or oppressive as applied to him, the courts will refuse to enforce

15 it against him. <i>See</i> <u>A & M Produce Co. v. FMC Corp.</u>, 135 Cal.App.3d 473, 497 (1982).

16       The concept of unconscionability includes both procedural and substantive

17 elements.  The procedural element involves the absence of meaningful choice due to inequality in

18 bargaining power or hidden terms. <i>See</i> <u>Kinney v. United Healthcare Services, Inc.</u>, 70

19 Cal.App.4th 1322, 1329 (1999).

20       Where, as here, the contract consisted of a standardized form with the terms either

21 set forth in diminutive print or contained within a lengthy referenced document to which access is

22 only provided after execution, and where the entirety of the terms are illusory, i.e., subject to

23 unilateral amendment by the drafting party, the procedural element of the unconscionability

24 analysis is satisfied.

25       The substantive element focuses on the terms of the agreement and whether they

26 are unjustifiably one-sided and unreasonably harsh. <i>See</i> <u>Stirlen v. Supercuts, Inc.</u>, 51 Cal.App.4th

27 1519, 1532 (1997).  Arbitration provisions granting unilateral rights to the drafting party over the

28 other are unconscionable. <u>Beynon v. Garden Grove Medical Group</u>, 100 Cal.App.3d 698 (1980).

-14-

When METABOLIFE, as the drafting party, has the ability to select or reject arbitration as a forum, the supposed agreement to arbitrate disputes is illusory and unenforceable:

> We have already referred to the strong policy favoring arbitration. That policy *is manifestly undermined by provision in arbitration clauses which seek to make the arbitration process itself an offensive weapon in one party's arsenal.*

Saika v. Gold, 49 Cal.App.4th 1074, 1081 (1996).

Here, under the terms of the disputed arbitration provision, METABOLIFE had the *exclusive right* to seek judicial relief. 2000 "Distributor Guidelines" at p. 32. Through its unilateral right to amend, METABOLIFE has granted itself a unilateral right to a judicial forum for any "relief available." Id. In short, METABOLIFE has effectively abrogated any mutual obligation to arbitrate.

In Stirlen v. Supercuts, Inc., supra, 51 Cal.App.4th 1519, the Court of Appeal determined that arbitration provisions which allow relief through the judicial system at the election of the drafting party while restricting the adhering party to arbitration are unconscionable:

> The trial court succinctly explained its conclusion that the arbitration clause was "so one-sided as to be unconscionable" as follows: "Defendants can use the court system for certain claims, but the plaintiff must use arbitration for all his, with very limited damages."

Id. at p. 1530.

Analyzing the drafter's right to obtain relief in court, the Stirlen Court comments:

> The unilateral right to litigate claims therefore cannot be justified by the need for provisional remedies. Furthermore, justification would be lacking even if [defendant] could show that its legitimate dispute resolution needs could not always be met through arbitration, for that is true with respect to [plaintiff's] claims.

Id. at p. 1537.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

-15-

The <u>Stirlen</u> Court recognized the pragmatic aspects of the unilateral terms:

> The mandatory arbitration requirement can only realistically be seen
> as applying primarily if not exclusively to claims arising out of the
> termination of [the agreement], which are virtually certain to be
> filed against, not by, [defendant]. [Defendant] identifies no
> provision of the [agreement] and no statute likely to give rise to a
> claim [defendant] would be compelled to submit to arbitration.  The
> only "[contract] disputes" likely to be initiated by [defendant] –
> such as claims that an employee violated a non-competition
> agreement or divulged confidential information – need not be
> arbitrated.

<u>Id</u>. at pp. 1540-41.

In sum, METABOLIFE's unilateral ability to amend the entirety of the agreement and subsequent unilateral amendment to impose a unilateral requirement for arbitration renders the terms of the agreement illusory and unconscionable.

## VII

## CONCLUSION

Arbitration is matter of contract between the parties.  The policy favoring arbitration does not displace the necessity for a voluntary agreement to arbitrate. <u>Badie v. Bank of America</u> (1998) 67 Cal.App.4th 779, 788.  In this case, the arbitration provision was contained within 2000 Distributor Guidelines - not the original contract to which plaintiffs signed.  While plaintiffs acknowledge in their original 1995 Distributor Application and Agreement that they were bound by the Distributor Guidelines "as amended from time to time" and that METABOLIFE could amend the Distributor Guidelines at its sole discretion, that ability to amend was nevertheless restricted by California law.

Unilateral contract modification clauses do not provide carte blanche to make any change whatsoever so long as the specified procedure is followed. <u>Badie</u> at 791.  The modification must be made in accordance with the terms of the contract, which means that its general subject matter was anticipated when the contract was entered into.

The question is whether the addition of arbitration to the contract was contemplated in the original agreement signed in 1995.  At most the agreement contemplated that plaintiff would not have jury rights and that plaintiff would first submit disputes to

-16-

1  mediation. The waiver of jury rights, however, does not mean the waiver of the right to the

2  judicial forum. Further, mediation is very different from arbitration in that the parties still have

3  access to the courts and do not waive their appeal rights.

4  Nothing in the original agreement anticipates a waiver of the judicial forum to

5  resolve disputes. In fact, the 1998 Distributor Guidelines provided a forum selection clause of

6  San Diego County. Though a forum selection clause is not necessarily incompatible with an

7  agreement to arbitrate, the 1998 Guidelines indicate, "each party hereby consents to the personal

8  jurisdiction of the above Court."

9  Assuming, *arguendo*, that the modification provision allowed METABOLIFE to

10  unilaterally require contractual arbitration upon plaintiff, the evidence shows that notice was not

11  properly given to plaintiff to effectuate a change. The multiple documents all contain different

12  requirements for notice. Pursuant to the 1995 Distributor Guidelines, "changes and amendments

13  to these Distributor Guidelines will be effective upon publication in an official Metabolife

14  bulletin, newsletter or magazine, or over the voice mail system. The 1998 Guidelines state that

15  changes would become effective upon "written notice to the distributor." Finally, the 1995

16  agreement provides for notice by certified mail.

17  Notice was ineffective under either the 1995, 1998 or 2000 Guidelines. Notice

18  of the arbitration provision was purportedly provided through a letter, dated February 9, 2000,

19  informing plaintiff that the January 2000 Guidelines were available on METABOLIFE's website

20  and fax-on-demand. Such notice did not constitute "written notice" of any changes explicitly

21  contemplated under the any of the Guidelines.

22  METABOLIFE is attempting to unilaterally impose arbitration on plaitniffs at a

23  time when METABOLIFE knew its misconduct would engender litigation. Neither the law,

24  public policy, or Constitutional considerations favor one party having such power so as to make

25  the agreement so illusory. The result would be an endemic epidemic of a heads-I-win-tails-you-

26  lose provision immersed within every adhesion contract.

27  \ \ \

28  \ \ \

-17-

1          For the foregoing reasons, plaintiffs respectfully request this court issue an order

2    denying the motion to compel arbitration

3

4    Dated: February 11, 2004

5    Edward C. Watkins, Jr., Esq.
     Kevin C. Young, Esq.

6    Scott W. McEwen, Esq.
     Attorney for Plaintiffs

7    RUSSELL ESPINOZA, JYLES MCKEE
     and CRYSTAL DAY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-